# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

STEVEN A. SAMET,

    Plaintiff,

vs.

BAYVIEW LOAN SERVICING, LLC, *et al.*,

    Defendants.

Case No.: 2:18-cv-00581-GMN-EJY

**ORDER**

Pending before the Court is Plaintiff Steven A. Samet's ("Plaintiff's") Motion to Dismiss, (ECF No. 40). Defendant Bayview Loan Servicing, LLC ("Defendant") filed a Response, (ECF No. 42),[1] and Plaintiff filed a Reply, (ECF No. 45).

Also pending before the Court is Defendant's Motion to Enforce Settlement, (ECF No. 43). Plaintiff filed a Response, (ECF No. 51),[2] and Defendant filed a Reply, (ECF No. 53).

Also pending before the Court is Defendant's Motion for Sanctions, (ECF No. 44). Plaintiff filed a Response, (ECF No. 52), and Defendant filed a Reply, (ECF No. 53).[3]

For the reasons discussed below, the Court **GRANTS** Defendant's Motion to Enforce Settlement and Plaintiff's Motion to Dismiss. Defendant's Motion for Sanctions is **DENIED**.

**I.**   **BACKGROUND**

This case arises from Defendant allegedly wrongfully reporting Plaintiff's deed of trust debt to credit reporting agencies in violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681

---

[1] Defendant's Response to Plaintiff's Motion to Dismiss, Defendant's Motion to Enforce Settlement, and Defendant's Motion for Sanctions, (ECF Nos. 42–44), are within the same document filed multiple times.

[2] Plaintiff's Response to Defendant's Motion for Sanctions and Plaintiff's Response to Defendant's Motion to Enforce Settlement, (ECF Nos. 51–52), are within the same document filed multiple times.

[3] Defendant replied to Plaintiff's Responses to the Motion to Enforce Settlement and Motion for Sanctions in the same document, (ECF No. 53).

*et seq.* (*See generally* Compl., ECF No. 1). Plaintiff alleges that he surrendered his real property located at 2331 Peaceful Sky Drive, Henderson, NV 89044 ("the Property") to BAC Home Loans Servicing, LLC ("BAC") in 2014 pursuant to the Confirmation Order in his bankruptcy case. (*Id.* ¶ 19). Defendant, as BAC's successor in interest, reported an outstanding debt owed on the deed of trust despite the earlier Confirmation Order allegedly discharging the debt. (*Id.* ¶¶ 20, 23–24, 39). Plaintiff alleges that, in so doing, Defendant violated the Fair Credit Reporting Act. (*Id.* 106–08).

On September 12, 2018, Plaintiff filed a Notice of Settlement in this case stating that the parties "have reached a tentative settlement." (Notice of Settlement 1:24–25, ECF No. 35). Defendant alleges that the parties reached a settlement agreement under which Plaintiff agreed not to contest foreclosure on the Property. (Def.'s Resp. to Mot. to Dismiss ("Def.'s Resp.") 3:3–16, ECF No. 42). After the purported settlement, Defendant's counsel discovered that Plaintiff applied for a loan modification that it argues was inconsistent with the settlement agreement. (Emails re: Application for Loan Modification ("Loan Emails") at 1, Ex. B to Mot. Enforce Settlement ("MES"), ECF No. 43-2). Plaintiff also filed a Petition for Foreclosure Mediation Assistance in state court on October 19, 2018, seeking an alternative to foreclosure of the Property, and the state court set a mediation for March 5, 2019. (MES at 4:1–5) (*See also* Petition for Foreclosure Mediation Assistance, Ex. C. to Def.'s Resp., ECF No. 42-3). On March 11, 2019, after the mediation, Plaintiff filed a Motion to Dismiss Defendant with prejudice, (ECF No. 40). Defendant opposes the Motion,[4] and it filed a Motion to Enforce Settlement and a Motion for Sanctions, (ECF Nos. 42–44).

//

//

---

[4] Defendant only opposes the Motion to Dismiss to the extent that it argues the Court "should hold Samet to the terms of the settlement agreement, and only then dismiss Bayview from the case." (Def.'s Resp. 2:18–21).

## II. LEGAL STANDARD

### a. Motion to Enforce Settlement

"It is well settled that a district court has the equitable power to enforce summarily an agreement to settle a case pending before it. However, the district court may enforce only *complete* settlement agreements." *Callie v. Near*, 829 F.2d 888, 890 (9th Cir. 1987) (citations omitted). "Whether the parties *intended* only to be bound upon the execution of a written, signed agreement is a factual issue." *Id*. at 890-91. "In addition to the intent of the parties to bind themselves, the formation of a settlement contract requires agreement on its *material terms*." *Id*. at 891. "Because a settlement agreement is a contract, its construction and enforcement are governed by principles of contract law." *May v. Anderson*, 119 P.3d 1254, 1257 (Nev. 2005) (footnote omitted).

Under Nevada law, "[b]asic contract principles require, for an enforceable contract, an offer and acceptance, meeting of the minds, and consideration." *Id*. (footnote omitted). "A valid contract cannot exist when material terms are lacking or are insufficiently certain and definite." *Id*. (footnote omitted). "A contract can be formed, however, when the parties have agreed to the material terms, even though the contract's exact language is not finalized until later." *Id*. (footnote omitted). Ordinarily, "[w]here a complete contract was made orally, the fact that it was expected that a written contract would afterwards be signed, embodying the terms of the oral contract, does not prevent the oral contract from taking effect." *Micheletti v. Fugitt*, 134 P.2d 99, 104 (Nev. 1943).

"In the case of a settlement agreement, a court cannot compel compliance when material terms remain uncertain." *May*, 119 P.3d at 1257 (footnote omitted). "The court must be able to ascertain what is required of the respective parties." *Id*. (footnote omitted). "[T]he question of whether a contract exists is one of fact." *Id*. A settlement contract is formed "when the parties have agreed to its material terms;" accordingly, a party's refusal to later execute a written

settlement agreement containing the agreed upon terms "does not render the settlement agreement invalid." *Id.* at 1256.

### b. Motion for Sanctions

District courts have inherent power to sanction a party for improper conduct. *Fink v. Gomez*, 239 F.3d 989, 991 (9th Cir. 2001). The court may only issue sanctions under its inherent power upon finding "bad faith or conduct tantamount to bad faith." *Id.* at 994. Bad faith or conduct tantamount to bad faith encompasses "a variety of types of willful actions, including recklessness when combined with an additional factor such as frivolousness, harassment, or an improper purpose." *Id.* Upon a finding of bad faith, the decision to issue sanctions is within the court's discretion. *Air Separation, Inc. v. Underwriters at Lloyd's of London*, 45 F.3d 288, 291 (9th Cir. 1995).

## III. DISCUSSION

The Court's below discussion addresses whether the parties executed an enforceable settlement contract, and, if the parties have an enforceable settlement contract, whether Plaintiff's subsequent conduct justifies imposition of sanctions.

### a. Settlement

Defendant argues that the parties reached an enforceable settlement contract because Plaintiff accepted Defendant's offer, which was supported by consideration and contained all the requisite material terms. (MES 4:19–5:8, ECF No. 43). Plaintiff suggests that (1) there is no enforceable settlement contract because it was not executed in a writing; (2) the agreement lacks material terms because there was no choice of law provision; and (3) the emails between the parties show that they did not agree upon the meaning of a material term: what constitutes contestation of foreclosure. (Resp. to MES 2:15–22, 4:8–22, ECF No. 51). Plaintiff also contends that, even if there is an enforceable settlement contract, the Plaintiff's availment of

foreclosure mediation did not violate the agreement because the proceedings did not "contest" foreclosure. (*Id.* 3:1–4:7).

In support of its position, Defendant provides an exchange of emails between the parties' counsel. (*See* Emails Agreeing to Settlement Terms ("Settlement Emails"), Ex. A to MES, ECF No. 41-1); (*See also* Loan Emails, Ex. B to Def.'s MES, ECF No. 43-2). The emails demonstrate that the parties began engaging in settlement negotiations via email on September 11, 2018. (Settlement Emails at 6) ("Bayview offers each of your clients $1000 (total $2000)."). After Plaintiff's counsel rejected the offer via counteroffer, (*Id.*), Defendant increased its monetary offer and stated that "[it] would also like the settlement agreement to confirm your clients will not attempt to contest foreclosure to the extent not already part of the confirmation order." (*Id.* at 5). After several more rounds of negotiation culminated in the parties agreeing to the monetary term, $7,000, Defendant still sought to have Plaintiff agree not to contest foreclosure. (*Id.* at 2–5) ("When you get a chance let me know about the consent to foreclose term. But for now, as discussed, i'll [sic] let my client know the deposition is off."). Plaintiff's counsel then informed Defendant on September 12, 2018, "I'm advised that the language you suggested won't be a bar to settlement. So we'll get notices of settlement on, and we'll wait for the SA. Glad we could work these cases out." (*Id.* at 1). That day, the parties filed the Notice of Settlement indicating that the parties had reached a tentative agreement. (Notice of Settlement, ECF No. 35).

On November 1, 2018, Plaintiff's counsel reached out to Defendant's counsel saying, "We settled [this case] on 9/12/2018. Approximately 50 days have passed since this matter was settled. Please forward our office your client's proposed form settlement agreement for the Plaintiff to review and sign." (Loan Emails at 2). In response, Defendant's counsel explained, "As part of the settlement agreement, they were to agree to consent to foreclosure. After Mr. Clark and I reached that agreement, we learned that your clients were simultaneously seeking

an agreement to modify their loan . . . . the intention to enter an agreement to modify the loan is inconsistent with the agreement to foreclose." (*Id.* at 1).

The Court concludes that the parties reached an enforceable settlement contract despite the agreement not being executed in a signed writing. Defendant made an ascertainable settlement offer: $7,000 in exchange for dismissal with prejudice and an agreement not to contest foreclosure. (*See* Settlement Emails at 1–2) (*see also* Notice of Settlement) (explaining that dismissal with prejudice was a term of the settlement contract). Plaintiff accepted the offer. (*See* Settlement Emails at 1). The promised exchange supplied sufficient consideration to make the contract enforceable. The negotiations indicate the agreement had only three material terms: the monetary offer to Plaintiff, the agreement to dismiss the case with prejudice, and an agreement not to contest Defendant's foreclosure of the Property. (*See id.*); (*see also* Notice of Settlement).

Ordinarily, the Court would hesitate to enforce an agreement the parties described as "tentative" in the Notice of Settlement. (*See* Notice of Settlement). However, the subsequent communications between the parties' counsel persuades the Court that any outstanding issues regarding settlement did not concern the material terms of the agreement. The emails indicate Plaintiff intended to be bound by the agreement prior to filing the Notice of Settlement because Plaintiff's counsel confirmed that it believed that the matter was "settled" on the September 12, 2018—the date of Plaintiff's counsel's acceptance email—and Plaintiff merely requested a written settlement agreement memorializing the contract. (S*ee* Loan Emails at 2) (explaining that counsel considered the case settled as of September 12, 2018); (*see also* Settlement Emails at 1 and Notice of Settlement) (describing the material terms of the agreement); s*ee, e.g.*, *Micheletti*, 134 P.2d at 104 ("[w]here a complete contract was made orally, the fact that it was expected that a written contract would afterwards be signed, embodying the terms of the oral contract, does not prevent the oral contract from taking effect."). Plaintiff provides no evidence

that the parties intended to be bound by the agreement only after its reduction to a signed writing.

The parties' omission of a choice of law provision in the contract is not fatal. There is no indication that a choice of law provision was a material term because the parties never negotiated for its inclusion. A choice of law provision is optional; it is not a material term unless the parties condition the agreement on its inclusion. *See* 15 Corbin on Contracts § 83.9 (2019) (explaining that parties often agree to choice of law provisions, but that state law will fill the gap in the absence of an agreement).

The Court concludes that the parties agreed upon the meaning of the provision consenting not to "contest" foreclosure. Plaintiff argues that "contest" is ambiguous because the Black's Law Dictionary definition of "contested case" is one that is "opposed by another person or interested party." (Resp. to MES, 3:10–4:7). He argues that because mediation does not necessitate opposition, the state court proceedings did not contest foreclosure. (*Id.*) Plaintiff's use of the definition of "contested case" does not persuade the Court that the parties did not agree upon the meaning of "contest."[5] In Defendant's final email preceding Plaintiff's acceptance, Defendant indicated that the term required Plaintiff to "consent to foreclosure." (Settlement Emails at 1). It seems obvious to the Court that Plaintiff's agreement to consent to foreclosure would not allow Plaintiff to ensnare Defendant into a judicial proceeding that has the goal of seeking an alternative to foreclosure.[6] Likewise, seeking to modify the loan upon which Defendant sought to foreclose necessarily contests Defendant's right to do so. The

---

[5] In fact, Black's explains that the verb, to "contest," includes "to oppose, resist, or dispute," which would include Plaintiff resisting Defendant exercising its right to foreclose either by seeking alternatives to foreclosure through mediation or trying to modify its loan upon which Defendant sought foreclose. *See* Black's Law Dictionary Online (2d ed.)

[6] The Nevada Foreclosure Mediation Program's rules indicate that the purpose of the program is to "exchange information and proposals that may avoid foreclosure." (Def.'s Reply 4:12–14, ECF No. 53) (quoting Nev. Foreclosure Med. R. 1(2)).

consent to foreclosure term cannot reasonably be disputed just because Plaintiff breached that provision of the settlement contract.

Accordingly, the parties have an enforceable contract, which the Court has the power to enforce. Pursuant to its authority to enforce the contract, the Court orders Plaintiff to refrain from taking any actions, including seeking alternatives to foreclosure through mediation or modification of his loan, that frustrate Defendant's right to foreclose on the Property.

### b. Sanctions

Defendant argues that Plaintiff acted in bad faith by taking conflicting positions in this case and in state court regarding the status of the Property, by filing this (allegedly frivolous) case, and by seeking and receiving attorney fees in the state court mediation. (Mot. for Sanctions 6:21–28, ECF No. 44). Plaintiff contends that Defendant's argument is conclusory and fails to allege any facts demonstrating that Plaintiff acted in bad faith. (Resp. to Mot. for Sanctions, 6:12–7:2, ECF No. 52). The Court agrees that Defendant has failed to satisfy its burden to demonstrate that Plaintiff acted in bad faith. The Court therefore declines to award sanctions against Plaintiff.

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that Defendant's Motion to Enforce Settlement, (ECF No. 43), is **GRANTED**. Plaintiff must comply with the parties' settlement by refraining from acting inconsistently with the agreement to consent to foreclosure of the Property. The Court finds that seeking modification of the loan encumbering the property or alternatives to foreclosure are inconsistent with the parties' settlement contract.

**IT IS FURTHER ORDERED** that Defendant's Motion for Sanctions, (ECF No. 44), is **DENIED**.

//

//

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Dismiss the Case with Prejudice, (ECF No. 40), is **GRANTED**.

The Clerk of Court shall close the case and enter judgment accordingly.

**DATED** this __17__ day of December, 2019.

_____
Gloria M. Navarro, District Judge
United States District Court